1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMES E PEREZ,

          Plaintiff,

    v.

LANCE SILVA, et al.,

          Defendants.

Case No.  15-cv-01771-EMC

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Docket No. 14

Plaintiff Thomas E. Perez, in his capacity as Secretary of Labor for the United States Department of Labor ("DOL"), has filed suit against Defendants Lance Silva, National Upholstering Company, Inc. ("NUC"), and the National Upholstering Company 401(k) Plan ("NUC Plan" or "Plan")[1] (collectively, "Defendants") pursuant to the Employee Retirement Income Security Act ("ERISA").  *See* 29 U.S.C. § 1132(a)(5) (providing that the Secretary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this title, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title").  After the Secretary served the complaint, Defendants made no appearance and failed to respond.  Accordingly, the Secretary sought entry of default against Defendants, and their default was entered on July 9, 2015.  *See* Docket No. 10 (notice).  The Secretary now seeks a default judgment.  Having considered the papers submitted,[2] as well as the oral argument of counsel, the Court hereby **GRANTS** the motion for default judgment.

---

[1] As stated in the Secretary's complaint, the Plan was named as a defendant "solely to assure that complete relief can be granted."  Compl. ¶ 10.
[2] No written opposition was filed.  Nor did Defendants appear at the hearing.

**United States District Court**
For the Northern District of California

1

## I.   FACTUAL & PROCEDURAL BACKGROUND

2      The Secretary's complaint and papers submitted in support of his motion for default

3   judgment reflect as follows.

4      NUC is a suspended California corporation.  It ceased operations in June 2010.  Prior to

5   ceasing operations, NUC manufactured furniture.  *See* Compl. ¶ 4.  Mr. Silva was, at some point,

6   the president of NUC.  *See* Compl. ¶ 5.

7      NUC sponsored and was the plan administrator for the NUC Plan, an employee pension

8   benefit plan as defined under ERISA.  *See* Compl. ¶¶ 3-4, 9 (citing 29 U.S.C. § 1002(3)).  Because

9   NUC exercised discretionary authority and control with respect to the management of the Plan,

10   NUC was a fiduciary of the Plan, as well as a party in interest to the Plan, within the meaning of

11   ERISA.  *See* Compl. ¶ 9 (citing 29 U.S.C. §§ 1002).  For the same reason, Mr. Silva was also a

12   fiduciary of and a party in interest to the Plan.  *See* Compl. ¶ 8.

13      After NUC ceased operations, Mr. Silva

14

15      began to engage in a pattern of unauthorized transactions wherein he
        accessed other participants' Plan accounts and caused several
        participants' account balances, or portions thereof, to be transferred
16      to himself.  Specifically, between September 10, 2011, and
        November 14, 2011, [Mr.] Silva improperly caused Fidelity
17      Investments to distribute $43,326.36 from four other participant's
        accounts to himself, without authorization, with the checks payable
18      to [himself].

19   Compl. ¶ 13.  Mr. Silva ultimately "pled guilty to criminal charges for the theft of the funds at

20   issue."  Hesik Decl. ¶ 6.

21      As for NUC, after it ceased operations, it "failed to take the proper steps to ensure that Plan

22   participants received distributions of their account balances.  For example, NUC failed to update

23   the Plan's online account to allow participants to access their benefits as required by governing

24   Plan documents."  Compl. ¶ 15; *see also* Compl. ¶ 20 (alleging that Plan "participants are unable

25   to access their Plan accounts, either to reinvest them in other tax-qualified retirement savings

26   vehicles before retirement, or to draw them down upon retirement").  Approximately $270,000 in

27   assets remain in the Plan.  *See* Compl. ¶ 15; Hasik Decl. ¶ 7.

28   ///

**United States District Court**
For the Northern District of California

## II. **DISCUSSION**

A.   Service of Process

"As a threshold matter in considering a motion for default judgment, the Court must first 'assess the adequacy of the service of process on the party against whom default is requested.'" *Bd. of Trs. of the Laborers Health & Welfare Trust Fund for N. Cal. v. Montes Bros. Constr., Inc.*, No. C-14-1324, 2014 U.S. Dist. LEXIS 156659, at *4 (N.D. Cal. Nov. 5, 2014).

The Secretary has provided evidence that it personally served the summons and complaint on Mr. Silva in May 2015. *See* Docket No. 6 (proof of service). Thus, service was properly effected on him pursuant to Federal Rule of Civil Procedure 4(e)(2)(A). *See* Fed. R. Civ. P. 4(e)(2)(A) (allowing for service by "delivering a copy of the summons and of the complaint to the individual personally").

As for NUC and the Plan, the Secretary effected service by serving Mr. Silva in May 2015. *See* Docket No. 6 (proof of service). Rule 4(h)(1)(B) allows for service on a corporation as well as an unincorporated association "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). The Ninth Circuit has explained that, in spite of the language of the rule,

> service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process. The rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice. Thus, the service can be made "upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service."

*Direct Mail Specialists, Inc. v. Eclat Comp. Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Here, the Court finds that the Secretary has adequately established a prima facie case for service on NUC and the Plan via Mr. Silva. Mr. Silva, though not the most recent president of NUC, was formerly a president and he apparently still had an active role in the company as a fiduciary of the Plan. In the absence of any evidence suggesting that Mr. Silva would not know what to do with

3

United States District Court
For the Northern District of California

1    the papers, the Court finds that service was properly effected on the two entities.

2    B.       *Eitel* Analysis

3           As noted above, after Defendants failed to respond to the complaint served upon them, the

4    Clerk of the Court entered their default on July 9, 2015. *See* Docket No. 10 (notice).  After entry

5    of a default, a court may grant a default judgment on the merits of the case.  *See* Fed. R. Civ. P.

6    55.  "The district court's decision whether to enter a default judgment is a discretionary one."

7    *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors that a court may consider in

8    exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
> the sum of money at stake in the action, (5) the possibility of a
> dispute concerning material facts, (6) whether the default was due to
> excusable neglect, and (7) the strong policy underlying the Federal
> Rules of Civil Procedure favoring decisions on the merits.

13   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Because default has already been

14   entered in this case, the Court must construe as true all factual allegations in the Secretary's

15   complaint except for those related to the amount of damages or other relief sought.  *See Televideo*

16   *Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

17          The Court finds that the *Eitel* factors largely weigh in favor of granting default judgment,

18   at least as to Mr. Silva and NUC.  As to the first factor, if the motion for default judgment were to

19   be denied, then the participants in the Plan, including but not limited to those whose funds were

20   taken by Mr. Silva, would likely be without a remedy.  *See Walters v. Shaw/Guehnemann Corp.*,

21   No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny

22   plaintiff's motion [for default judgment] would leave them without a remedy.  Prejudice is also

23   likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d

24   1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs

25   will likely be without other recourse for recovery.").  Also, the sum of money at stake in the action

26   is appropriate as it is tailored to the specific alleged misconduct of Mr. Silva.  *See id.* at 1176

27   (stating that "the court must consider the amount of money at stake in relation to the seriousness of

28   Defendant's conduct").  In addition, there is nothing to suggest that there is a possibility of a

4

1  dispute concerning material facts.[3]  Further, there is no indication that Mr. Silva and NUC's

2  default was due to excusable neglect.  Finally, while public policy favors decisions on the merits,

3  *Eitel*, 782 F.2d at 1472, Defendants' refusal to defend this action renders a decision on the merits

4  "impractical, if not impossible."  *PepsiCo*, 238 F. Supp. 2d at 1177.

5           The only factors that deserve closer analysis are the second and third factors – that is, the

6  merits of the Secretary's substantive claims and the sufficiency of the complaint.  The Court

7  agrees that Mr. Silva's conduct in taking assets from Plan participants' without their consent

8  constitutes a violation of several ERISA provisions.  *See* 29 U.S.C. § 1104(a)(1)(A) (providing

9  that a fiduciary shall discharge his duties for the exclusive purpose of "providing benefits to

10  participants and their beneficiaries"); *id.* § 1104(a)(1)(B) (providing that a fiduciary shall

11  discharge his duties "with the care, skill, prudence, and diligence under the circumstances then

12  prevailing that a prudent man acting in a like capacity and familiar with such matters would use in

13  the conduct of an enterprise of a like character and with like aims"); *id.* § 1106(a)(1)(D)

14  (providing that a fiduciary shall not engage in a transaction that transfers assets of a plan to a party

15  in interest); *id.* § 1106(b)(1) (providing that a fiduciary shall not "deal with the assets of the plan

16  in his own interest or for his own account").

17           The Court further agrees that NUC's failure to take steps to ensure that Plan participants

18  received distributions of their account balances (after NUC ceased operations) also constitutes a

19  violation of several ERISA provisions.  *See id.* § 1104(a)(1)(A) (providing that a fiduciary shall

20  discharge his duties for the exclusive purpose of "providing benefits to participants and their

21  beneficiaries"); *id.* § 1104(a)(1)(B) (providing that a fiduciary shall discharge his duties "with the

22  care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

23  acting in a like capacity and familiar with such matters would use in the conduct of an enterprise

24  of a like character and with like aims"); *id.* § 1104(a)(1)(D) (providing that a fiduciary shall

25  discharge his duties "in accordance with the documents and instruments governing the plan").

26

27  _____

[3] For example, the Secretary served the motion for default judgment on Defendants (more

28  specifically, on Mr. Silva, both individually and as a representative of NUC and the Plan), but no
   written opposition was ever filed by any Defendant.

5

United States District Court
For the Northern District of California

1    The only issue that gives the Court some pause is the Secretary's attempt to hold NUC

2  liable for the acts of Mr. Silva.  Title 29 U.S.C. § 1105 addresses liability for breach by a co-

3  fiduciary.  It provides in relevant part as follows:

> In addition to any liability which he may have under any other
> provision of this part [29 U.S.C. § 1101 *et seq.*], a fiduciary with
> respect to a plan shall be liable for a breach of fiduciary
> responsibility of another fiduciary with respect to the same plan in
> the following circumstances:
>
> . . . .
>
> (2)     if, by his failure to comply with section 404(a)(1) [29 U.S.C.
>          §  1104(a)(1)] in the administration of his specific
>          responsibilities which give rise to his status as a fiduciary, he
>          has enabled such other fiduciary to commit a breach; or
>
> (3)     if he has knowledge of a breach by such other fiduciary,
>          unless he makes reasonable efforts under the circumstances
>          to remedy the breach.

*Id.* § 1105(a).  According to the Secretary,

> NUC is liable as a co-fiduciary . . . because (1) NUC enabled [Mr.]
> Silva to commit such breaches by its failure to comply with §
> 404(a)(1)(A) and (D) . . . and (2) NUC had knowledge of [Mr.]
> Silva's breaches and failed to make reasonable efforts under the
> circumstances to remedy such breaches.

Compl. ¶ 19.

19    The first theory of liability, however, is tenuous.  It is questionable whether NUC's failure

20  to take steps to ensure that Plan participants received distributions of their account balances (after

21  NUC ceased operations) enabled Mr. Silva's theft.  As for the second theory, the Court has

22  concerns because the Secretary has not explained *how* NUC had knowledge of Mr. Silva's theft

23  and then failed to make reasonable efforts to remedy the situation.

24    At the hearing, the Secretary argued for the first time that NUC had knowledge of the Mr.

25  Silva's breaches because Mr. Silva's knowledge (of his own breaches) could be imputed to NUC,

26  especially as he was a high-level employee of NUC.  But the language used in § 1105 suggests to

27  the contrary – *i.e.*, there is co-fiduciary liability where one fiduciary has knowledge of the *other*

28  fiduciary's breaches.  Furthermore, the Secretary has not offered any authority to support his

6

1    position.  Finally, there is at least some authority to the contrary.  *See Harris v. Fich, Pruyn & Co.,*

2    *Inc.*, No. 1:05-CV-951 (FJS/RFT), 2008 U.S. Dist. LEXIS 39033, at \*26 (N.D.N.Y. May 13,

3    2008) (stating that "Plaintiffs may not rely on the theory that Defendant Finch Pruyn acquired

4    knowledge of the breaches by virtue of Defendant Benway's and Defendant Levandosky's

5    knowledge" because, "[i]n ERISA co-fiduciary cases, an agent's knowledge cannot be imputed to

6    the principal" – "[t]o allow knowledge to be imputed pursuant to traditional agency theory would .

7    . . circumvent [ERISA's fiduciary liability] scheme by imposing virtually strict liability on

8    principals for breaches of their agents, thus extending co-fiduciary liability beyond the strictly-

9    delimited categories of 29 U.S.C. § 1105(a)").

10          As for the Plan, the Court shall not enter a default judgment against it because, as the

11    Secretary himself concedes in his complaint, the Plan has not engaged in any wrongdoing itself

12    but has simply been  named to ensure that complete relief can be obtained.  That being said,

13    because the Plan was given notice of the suit, but failed to appear, it cannot protest the relief that

14    the Court shall grant, as discussed below.

15    C.    Relief

16          Having concluded that a default judgment against Mr. Silva and NUC is appropriate, the

17    Court now turns to the relief sought by the Secretary.  As noted above, under ERISA, the

18    Secretary has the authority to bring a civil action "(A) to enjoin any act or practice which violates

19    any provision of this title, or (B) to obtain other appropriate equitable relief (i) to redress such

20    violation or (ii) to enforce any provision of this title."  29 U.S.C. § 1132(a)(5).  Furthermore,

21    ERISA provides that

22

23          [a]ny person who is a fiduciary with respect to a plan who breaches
             any of the responsibilities, obligations, or duties imposed upon
             fiduciaries by this title shall be personally liable to make good to

24          such plan any losses to the plan resulting from each such breach, and
             to restore to such plan any profits of such fiduciary which have been

25          made through use of assets of the plan by the fiduciary, and shall be
             subject to such other equitable or remedial relief as the court may

26          deem appropriate, including removal of such fiduciary.

27    *Id.* § 1109(a).

28          Consistent with his complaint, the Secretary asks for the following relief:

7

1   (1) An order requiring Mr. Silva and NUC to restore $55,838.84 to the NUC Plan;

2   (2) An order removing Mr. Silva and NUC as fiduciaries of the Plan;

3   (3) An order appointing Metro Benefits, Inc. as an independent fiduciary to the Plan;

4   (4) An order requiring Mr. Silva and NUC to pay the independent fiduciary $5,950 to cover its

5   reasonable fees;

6   (5) A permanent injunction enjoining Mr. Silva and NUC from future violations of ERISA;

7   (6) A permanent injunction enjoining Mr. Silva from future service as a fiduciary of, or service

8   provider to, any ERISA-covered plan.

9   (7) An order assessing a 20% civil penalty on any amounts recovered under the judgment.

10     1. Restoring Funds to the Plan

11     The Secretary asks first for an order requiring Mr. Silva and NUC to restore $55,838.84 to

12   the NUC Plan.  This figure is based on the $43,326.36 that Mr. Silva stole from the Plan

13   participants, plus $12,412.48 in what the Secretary calls "lost earnings" (*i.e.*, return that would

14   have been earned had the funds not been stolen by Mr. Silva in the first place).  Mot. at 10.  The

15   Secretary calculated the lost earnings by using the interest rate specified in 26 U.S.C. § 6621.[4]  *See*

16   Hesik Decl. ¶ 10.  In the alternative, the Secretary asks for the interest rate to be based on 28

17   U.S.C. § 1961,[5] which would yield a total interest of $452.94.  *See* Hesik Decl. ¶ 11.

18     As a preliminary matter, the Court shall order Mr. Silva only to restore funds, as it is not

19   holding NUC liable for the breach of its co-fiduciary.  As to Mr. Silva, it is equitable to order the

20   restoration of $43,326.36, as that represents the money stolen by Mr. Silva.

21     With respect to lost earnings, the Court deems it equitable to make an award of

22   prejudgment interest given that the Plan and/or the Plan participants were deprived of the use of

23   the $43,326.36.

24

25   [4] Section 6621 provides in relevant part that "[t]he underpayment rate established under this
26   section shall be the sum of (A) the Federal short-term rate determined under subsection (b), plus
(B) 3 percentage points."  26 U.S.C. § 2261(a)(2).
27   [5] Section 1961 provides in relevant part: "Such interest shall be calculated . . . at a rate equal to the
weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors
28   of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28
U.S.C. § 1961.

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1    The only question remaining is which interest rate should apply – that provided under §

2    6621 or that provided under § 1961.[6]  The Ninth Circuit has stated that, "[g]enerally, 'the interest

3    rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate

4    of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of

5    that particular case require a different rate.'"  *Blankenship v. Liberty Life Assur. Co.*, 486 F.2d

6    620, 628 (9th Cir. 2007).  In his motion, the Secretary contends that § 6621 should apply instead

7    of § 1961 because the § 1961 interest "rate is at historically low levels.  Therefore, awarding pre-

8    judgment interest at the 28 U.S.C. § 1961 rate would not effectuate the remedial purpose of

9    ERISA to put the Plan in the position it would have been but for the breaches of the Default

10   Defendants."  Mot. at 11.  The Court finds that the Secretary has adequately stated a basis for

11   applying the higher interest rate.  *See Russo v. Unger*, 845 F. Supp. 124, 126 (S.D.N.Y. 1994)

12   (stating that "'the district court has discretion to apply the Section 6621 rate, provided it finds,

13   based on the evidence before it, that that rate is an appropriate one consistent with Section 409's

14   standard of making the plan whole, and the court must make specific determination as to that

15   appropriateness'").  Furthermore, the Court notes that the equities weigh in favor of a higher

16   interest rate given that Mr. Silva, in essence, stole from the Plan.

17        2.      Removal as Fiduciaries

18        ERISA specifically contemplates that removal of a fiduciary may be appropriate equitable

19   or remedial relief where the fiduciary has breached its responsibilities.  *See* 29 U.S.C. § 1109(a).

20   Here, the Court finds that removal of Mr. Silva and NUC is appropriate, as requested by the

21   Secretary.  Mr. Silva, as noted above, stole from the Plan/Plan participants.  As for NUC, it has

22   "failed to take the proper steps to ensure that Plan participants received distributions of their

23   account balances."  Compl. ¶ 15; *see also* Compl. ¶ 20 (alleging that Plan "participants are unable

24   to access their Plan accounts, either to reinvest them in other tax-qualified retirement savings

25   vehicles before retirement, or to draw them down upon retirement").  Failing to satisfy such a

26

27   [6] The Secretary has not made the argument that prejudgment interest should be based on, *e.g.,* the
     rate of return that the Plan made on funds that were not misappropriated during or about that same
28   time period.  *See Russo v. Unger*, 845 F. Supp. 124, 126-27 (S.D.N.Y. 1994) (considering
     historical rates of return of ERISA plan).

United States District Court
For the Northern District of California

1    basic duty counsels against its continued role as a fiduciary for the Plan.

2            3.      Appointment of Independent Fiduciary and Payment of Independent Fiduciary's

3               Fees

4          In place of Mr. Silva and NUC, the Secretary asks that the Court appoint an independent

5    fiduciary and that Mr. Silva and NUC be compelled to pay for the reasonable fees of the

6    independent fiduciary.  The Court agrees that such relief is appropriate.  As Mr. Silva and NUC

7    are no longer fiduciaries, and there is nothing to indicate that there is another fiduciary who will

8    take on responsibility for the Plan, an independent fiduciary shall be appointed.  The DOL has

9    obtained bids from three potential fiduciaries (to terminate the Plan and distribute assets to

10   participants and beneficiaries) and determined that Metro Benefits, Inc. is the best candidate.

11   Metro Benefits's fee for the scope of work is $5,950.  *See* Hesik Decl. ¶ 8.  Because the DOL has

12   acted reasonably in its selection process and Metro Benefits's fee is not unreasonable, the Court

13   shall appoint Metro Benefits as the independent fiduciary, with the understanding that its services

14   shall not cost more than $5,950.  *See generally Perez v. Bar-K, Inc.*, No. 14-cv-05549-JSW (JSC),

15   2015 U.S. Dist. LEXIS 94226 (N.D. Cal. June 4, 2015) (report and recommendation) (removing

16   fiduciary and appointing independent fiduciary), *adopted by* 2015 U.S. Dist. LEXIS 94225 (N.D.

17   Cal. July 20, 2015).  In addition, the Court finds it equitable for Mr. Silva and NUC to pay for the

18   cost of the independent fiduciary because it was their failure to comply with their fiduciary

19   obligations that necessitated the appointment of an independent fiduciary.

20           4.      Enjoining Future Violations of ERISA

21         The Secretary asks next for an injunction enjoining Mr. Silva and NUC from future

22   violations of ERISA.  While the request is not without any merit, the Court shall not impose the

23   injunction as it is tantamount to an obey-the-law injunction.  *See EEOC v. AutoZone, Inc.*, 707

24   F.3d 824, 841 (7th Cir. 2013) (noting that "[a]n injunction that does no more than order a defeated

25   litigant to obey the law raises several concerns" – *e.g.*, overbreadth and vagueness).

26           5.      Enjoining Future Service as Fiduciary or Service Provider

27         The Court, however, shall grant the Secretary's request for an injunction enjoining Mr.

28   Silva from future service as a fiduciary of, or service provider to, any ERISA-covered plan.  Given

1    the seriousness of Mr. Silva's conduct, such relief is appropriate.  *See, e.g.*, *Chao v. Merino*, 452

2    F.3d 174, 185-86 (2d Cir. 2006) (noting that relief under § 1109 "may include a permanent

3    injunction barring a former ERISA fiduciary from providing services or acting as a fiduciary to

4    any employee benefit plan in the future" and that such relief "is not limited to cases in which the

5    fiduciary has engaged in self-dealing").

6          6.      Assessment of 20% Civil Penalty

7          Finally, the Secretary asks that the Court's order include a provision that "[t]he Secretary

8    will assess a civil penalty of 20% to amounts recovered under this Judgment as required by" 29

9    U.S.C. § 1132.  Prop. Order ¶ 9.  Section 1132(l) provides in relevant part as follows:

10

11          (1)    In the case of –

12               (A)    any breach of fiduciary responsibility under (or other
                        violation of) part 4 [29 U.S.C. § 1101 *et seq.*] by a
13                      fiduciary, or

14               (B)    any knowing participation in such a breach or
                        violation by any other person,

15               the Secretary shall assess a civil penalty against such
                 fiduciary or other person in an amount equal to 20 percent of
16               the applicable recovery amount.

17          . . . .

18          (3)    The Secretary may, in the Secretary's sole discretion, waive
                   or reduce the penalty under paragraph (1) if the Secretary
19                 determines in writing that –

20               (A)    the fiduciary or other person acted reasonably and in
                        good faith, or
21
                 (B)    it is reasonable to expect that the fiduciary or other
22                      person will not be able to restore all losses to the plan
                        (or to provide the relief ordered pursuant to
23                      subsection (a)(9)) without severe financial hardship
                        unless such waiver or reduction is granted.
24

25    29 U.S.C. § 1132(l).  Given the mandatory language in § 1132(l), the Court shall include in its

26    order the 20% civil penalty.  The order, however, shall be applicable to Mr. Silva only, as he is the

27    only defendant liable for monetary damages.  Moreover, the Court's ruling here shall not bar Mr.

28    Silva from asking for, or the Secretary from deciding that, a waiver is appropriate under the

**United States District Court**
For the Northern District of California

11

**United States District Court**
For the Northern District of California

1  circumstances.

2  ### III. CONCLUSION

3  For the foregoing reasons, the Court **GRANTS** the Secretary's motion for default

4  judgment and orders as follows:

5  (1)   Within sixty (60) days of entry of final judgment, Mr. Silva shall make restitution to the

6  Plan by restoring $55,838.84, which includes $43,326.36 in principal loses and $12,512.48

7  in prejudgment interest;

8  (2)   Mr. Silva and NUC are immediately removed as fiduciaries of the NUC Plan;

9  (3)   Metro Benefits, Inc. (of 8150 Perry Highway, Suite 311, Pittsburgh, Pennsylvania 15237)

10  is appointed as independent fiduciary of the NUC Plan and has sole responsibility for

11  administering the Plan;

12  (4)   Within sixty (60) days of entry of final judgment, Mr. Silva and NUC shall pay Metro

13  Benefits $5,950 to cover its reasonable fees;

14  (5)   Mr. Silva is permanently enjoined from future service as a fiduciary of, or service provider

15  to, any ERISA-covered plan; and

16  (6)   The Secretary shall assess a civil penalty of 20% to amounts recovered under this

17  judgment as required by 29 U.S.C. § 1132.

18  As to Metro Benefits's powers, duties, and responsibilities as appointed independent

19  fiduciary, the Court hereby orders as follows:

20  A.   The Independent Fiduciary shall have full fiduciary authority and shall have all the powers,

21  rights, discretion, and duties of a trustee, fiduciary, and Plan Administrator under ERISA;

22  B.   The Independent Fiduciary's responsibilities shall include, but shall not be limited to,

23  establishment or continuation of trust accounts for the benefit of the Plan's participants and

24  beneficiaries, communication with participants regarding their account disbursement

25  options, collection of any necessary information from those persons or entities in custody

26  of such information including bankruptcy trustees, calculation of the participants' and

27  beneficiaries' account balances, and shall file a final Form 5500;

28  C.   The Independent Fiduciary shall have responsibility and authority to collect, liquidate, and

12

**United States District Court**
For the Northern District of California

1    manage the Plan's assets for the benefit of the eligible participants and beneficiaries who

2    are entitled to receive such assets, until such time that the Plan's assets are distributed to

3    those participants and beneficiaries;

4    D.    The Independent Fiduciary shall exercise reasonable care and diligence to identify and

5          locate each participant or beneficiary who is eligible to receive a distribution under the

6          terms of the Plan.  Further, the Independent Fiduciary shall make distributions to each

7          eligible participant and beneficiary of the Plan;

8    E.    The Independent Fiduciary shall have full access to all data, information and calculations

9          in the Plan's possession or under its control, including information and records maintained

10         by the Plan's custodial trustee, service providers, and Mr. Silva;

11   F.    Mr. Silva shall fully cooperate with all reasonable requests by the Independent Fiduciary to

12         facilitate the administration, liquidation and/or termination of the Plan;

13   G.    As soon as administratively practicable after appointment, the Independent Fiduciary shall

14         provide for the orderly termination and liquidation of the Plan, including making all

15         distributions and/or rollovers to the participants and beneficiaries;

16   H.    The Independent Fiduciary shall have full authority to amend the Plan as necessary to

17         effectuate its termination and the processing of all participant distributions; and

18   I.    The Independent Fiduciary shall provide to the Secretary any and all information he

19         requests concerning the Plan, including but not limited to information concerning the

20         assets remaining in the plan and the status of distributions.  All information shall be mailed

21         to the Regional Director at this address:

22                            Regional Director, EBSA

23                            90 7th Street, Suite 11-300

24                            San Francisco, CA 94103

25   J.    Should Mr. Silva and/or NUC default under their obligation to pay the Independent

26         Fiduciary's fees as set forth in Paragraph 4 above, the Independent Fiduciary may obtain

27         payment from the Plan of no more than $5,950.00 to cover the Independent Fiduciary's

28         reasonable fees.  Mr. Silva and NUC shall remain liable for these amounts and any

13

1   amounts subsequently obtained from Mr. Silva and/or NUC in satisfaction of this debt

2   shall be restored to the Plan.

3   The Clerk of the Court is instructed to enter judgment in accordance with the above and

4   close the file in the case.

5

6   This order disposes of Docket No. 14.

7

8   **IT IS SO ORDERED**.

9

10   Dated: November 11, 2015

11   _____

EDWARD M. CHEN
United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

14